UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHWESTERN DIVISION

**BARRY PAYNE, JR.,**

    **Plaintiff,**

v.                                      Case No. 3:25-cv-776-HDM

**BLAKE BURNS,** *et al.***,**

    **Defendants.**

## MEMORANDUM OPINION

Barry Payne, Jr., is suing numerous individuals and entities over his treatment at the hands of police and the medical care he received while in the Colbert County Jail. (*See* Doc. 22). Specifically, he is suing Blake Burns, Joshua Phillips, and Cherokee, Alabama ("Cherokee") for Burns's use of excessive force during his arrest of Payne in violation of Section 1983 of the U.S. Code, pursuant to a policy and custom of Phillips and Cherokee (Count I). He is also suing Phillips, Cherokee, QCHC, Inc. ("QCHC"), Doris Pilkington, Johnny Bates, Donald Kern, Marcus Rutland, Josh Smith, Ricky Moore, and Eric Ballentine for denial of care for a serious medical need under Section 1983 (Count II). *Id.* Finally, he is suing QCHC, Pilkington, Bates, and Kern for medical negligence. *Id.* at 13. Four of those defendants—Bates, Kern, Pilkington, and QCHC—filed the pending motion to dismiss. (*See* Doc. 26).

BACKGROUND

Payne pleaded the following facts, accepted here as true:

Payne was arrested on May 27, 2023. (Doc. 22 at 4-6). During his arrest, Burns—a Cherokee police officer—shot Payne with his taser several times. *Id.*, ¶¶ 33-39. Payne was then booked into the Colbert County Jail (the "Jail"). *Id.*, ¶ 66. Shortly thereafter, at around 6:30 p.m., he started experiencing symptoms related to rhabdomyolysis, a serious medical condition that is known to result from excessive tasing. *Id.*, ¶¶ 45, 66. By roughly 2:00 a.m., the symptoms were extreme. *Id.*, ¶ 67. Payne had severe pain, could barely move his limbs, and could not sit. *Id.* During the night, he screamed and begged for help. *Id.*, ¶ 68.

In the morning, Payne was taken by Moore, a correctional officer at the Jail, *id.*, ¶ 14, to see Pilkington, *id.*, ¶ 69, a nurse who managed the medical care at the Jail for QCHC, *id.*, ¶ 16. Pilkington immediately recognized that Payne was suffering from severe, life-threatening rhabdomyolysis and that he needed immediate treatment in a hospital, and so informed Payne. *Id.*, ¶ 70. Rather than calling 911 or otherwise taking steps to get Payne promptly to the hospital, Pilkington, pursuant to established policy and custom, referred Payne to Jail personnel to contact the Town of Cherokee to come pick Payne up and take him to the hospital. *Id.*, ¶ 72. Even if an inmate has an immediate medical need that will be exacerbated by a delay in treatment (like Payne's rhabdomyolysis), neither QCHC

and its medical personnel nor the sheriff and Jail personnel will call an ambulance or otherwise make sure the inmate promptly receives the medical care required. *Id.*, ¶ 73. Instead, inmates will either be given an OR bond and released from the Jail (to walk to the hospital if they cannot get a ride) or be forced to wait on a Cherokee officer to pick the inmate up and take the inmate to the hospital. *Id.*, ¶ 74.

This policy and custom were established and maintained in part by Defendants QCHC, Bates, Kern, and Pilkington so that the sheriff could avoid responsibility for the costs of necessary emergency medical care, including ambulance and hospital charges, and not for any legitimate purpose. *Id.*, ¶¶ 77, 78. Each of the individual defendants was aware that this policy and custom created a substantial risk that inmates would suffer serious harm. *Id.*, ¶ 79.

Before making this referral, Pilkington called a QCHC physician, presumably either Defendant Bates or Kern, who confirmed that Payne needed immediate treatment in a hospital. *Id.*, ¶ 83. Bates, a physician, is the owner and CEO of QCHC. *Id.*, ¶ 17. Kern, also a physician, is the medical director for QCHC. *Id.*, ¶ 18. Both Bates and Kern provided physician medical services at the Jail for QCHC. *Id.*, ¶¶ 17-18. Pilkington then communicated to Jail personnel Payne's need for immediate treatment in a hospital. *Id.*, ¶ 84. Pursuant to established policy and practice, Pilkington and several other police officers, Jail administrators, and correctional officers (Rutland, Ballentine, Smith, and Phillips) agreed that Payne would not be

taken immediately to the hospital. *Id.*, ¶ 86. Instead, Phillips, the Cherokee police chief, *id.*, ¶ 9, drove from Cherokee to take Payne to the hospital, *id.*, ¶¶ 86-87. As a result of these Defendants' failure—in keeping with QCHC's policy and custom—to call 911 or otherwise ensure that Payne was taken immediately to the hospital, he was delayed in reaching the hospital by over an hour, exacerbating his rhabdomyolysis, inflicting unnecessary suffering on Payne, and risking his life. *Id.*, ¶¶ 88-89. Due to the severity of Payne's rhabdomyolysis, he still suffers from its effects and may for the rest of his life. *Id.*, ¶ 91.

## LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). "[C]omplaints alleging discrimination . . . must meet [this] plausibility standard . . . ." *Henderson v. JP Morgan Chase Bank, N.A.*, 436 F. App'x 935, 937 (11th Cir. 2011) (internal quotation marks omitted). "Conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." *Wiersum v. U.S. Bank, N.A.*, 785 F.3d 483, 485 (11th Cir. 2015) (internal quotation marks omitted). Similarly, a formulaic recitation of the elements of a cause of action is inadequate. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

In considering the facts, courts view the allegations in the complaint in the light most favorable to the non-moving party. *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007). And the plaintiff must merely produce enough facts to "raise a reasonable expectation that discovery will reveal evidence" of the necessary elements. *Miyahira v. Vitacost.com, Inc.*, 715 F.3d 1257, 1265 (11th Cir. 2013) (quoting *Twombly*, 550 U.S. at 556). The pleading standard "requires only a plausible short and plain statement of the plaintiff's claim, not an exposition of his legal argument." *Skinner v. Switzer*, 562 U.S. 521, 530 (2011). At this stage, the issue is "not whether [the plaintiff] will ultimately prevail . . . but whether his complaint was sufficient to cross the federal court's threshold." *Id.* (internal quotation marks and citations omitted).

## DISCUSSION

Defendants Bates, Kern, Pilkington, and QCHC move for this court to dismiss Count II, denial of care, and Count III, medical negligence, against them. (*See* Doc. 26). For the reasons laid out below, Defendants' motion to dismiss is due to be **DENIED** on these counts.

**Count II: Denial of Care**

Under the Eighth Amendment's prohibition of "cruel and unusual punishments," jail personnel cannot act with deliberate indifference to the medical needs of inmates. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). The Eleventh Circuit

has applied an "identical" deliberate-indifference standard for the treatment of pretrial detainees such as Payne under the Fourteenth Amendment. *Goebert v. Lee Cnty.*, 510 F.3d 1312, 1326 (11th Cir. 2007).

To establish deliberate indifference, a plaintiff must show (1) "that [he] had a serious medical need," (2) "that the [jail] official acted with deliberate indifference to [his] serious medical need," and (3) that there is causation. *Id.* The first prong is objective, in the sense that it looks to the inmate's actual medical condition; the second is subjective, in the sense that it looks to the official's state of mind. *Id.*

"A medical need that is serious enough to satisfy the objective component is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Id.* (internal quotations omitted). Payne alleged that upon being taken to see Pilkington, Pilkington "immediately recognized that Payne was suffering from severe, life-threatening rhabdomyolysis, that he needed immediate treatment in a hospital, and so informed Payne." (Doc. 22, ¶ 70). She then "called a QCHC physician, presumably either defendant Bates or Kern, who confirmed that Payne needed immediate treatment in a hospital." *Id.*, ¶ 83. "Pilkington then communicated to jail personnel Payne's need for immediate treatment in a hospital." *Id.*, ¶ 84. These facts, taken as true, plausibly show that Payne had a serious medical need, thus satisfying the objective prong.

6

Under the subjective prong, deliberate indifference requires "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than [gross] negligence." *Goebert*, 510 F.3d at 1327 (alteration in original) (quoting *Bozeman v. Orum*, 422 F.3d 1265, 1272 (11th Cir. 2005)).

To satisfy the first requirement, a plaintiff must plausibly allege facts showing "how [each of the] Defendants" would have had the "actual knowledge" alleged. *Harper v. Lawrence Cnty., Alabama*, 592 F.3d 1227, 1234-35 (11th Cir. 2010). "Each individual defendant must be judged separately and on the basis of what that person knows." *Id.* at 1234 (quoting *Burnette v. Taylor*, 533 F.3d 1325, 1331 (11th Cir. 2008)). "Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was 'obvious.'" *Farmer v. Brennan*, 511 U.S. 825, 842 (1994) (citation omitted).

To satisfy the second and third requirements, the plaintiff must plausibly allege facts showing that each defendant disregarded that risk by conduct that is more than gross negligence. *See Goebert*, 510 F.3d at 1327. In the specific context of a claim arising out of the alleged denial of medical care, conduct that is more than mere negligence includes: (1) knowledge of a serious medical need and a failure or refusal to provide care; (2) delaying treatment for non-medical reasons; (3) grossly

inadequate care; (4) a decision to take an easier but less efficacious course of treatment; or (5) medical care that is so cursory as to amount to no treatment at all. *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999). "However, medical treatment violates the Constitution only when it is 'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.'" *Dang ex rel. Dang v. Sheriff, Seminole Cnty. Fla.*, 871 F.3d 1272, 1280 (11th Cir. 2017) (quoting *Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir. 1986)). The subjective elements of a deliberate indifference claim ensure that accidental inadequacy, negligent diagnosis or treatment, and even medical malpractice are not actionable under Section 1983. *Taylor v. Adams*, 221 F.3d 1254, 1258 (11th Cir. 2000). Each defendant must be analyzed separately. *See Goebert*, 510 F.3d at 1327.

First, Payne has satisfied this pleading standard as to Doris Pilkington. Payne pleaded that he was taken by Moore to see Pilkington, (doc. 22 ¶ 69), and that Pilkington "immediately recognized that Payne was suffering from severe, life-threatening rhabdomyolysis, that he needed immediate treatment in a hospital, and so informed Payne," *id.*, ¶ 70. She then "called a QCHC physician, presumably either defendant Bates or Kern, who confirmed that Payne needed immediate treatment in a hospital." *Id.*, ¶ 83. "Pilkington then communicated to jail personnel Payne's need for immediate treatment in a hospital." *Id.*, ¶ 84. These facts, accepted as true,

8

plausibly show that Pilkington was aware of a substantial risk of serious harm to Payne.

After recognizing that Payne "was suffering from severe, life-threatening rhabdomyolysis[ and] that he needed immediate treatment in a hospital," (doc. 22, ¶ 70), "[r]ather than call[ing] 911 or otherwise tak[ing] steps to get Payne promptly to the hospital, Pilkington—pursuant to an established policy regarding Cherokee (and other non-county) inmates—referred Payne to jail personnel to contact the Town of Cherokee to come pick Payne up and take him to the hospital," *id.*, ¶ 72. "As a result, Payne was delayed in reaching the hospital by over an hour, exacerbating his rhabdomyolysis, inflicting unnecessary suffering on Payne, and risking Payne's death." *Id.*, ¶ 89. "Due to the severity of Payne's rhabdomyolysis, Payne still suffers from its effects and may for the rest of his life." *Id.*, ¶ 91.

This delay of treatment was due to a custom and policy that was put in place "so that the sheriff could avoid responsibility for the costs of necessary emergency medical care, including ambulance and hospital charges and not for any legitimate purpose." *Id.*, ¶ 78. These facts, accepted as true, plausibly show that Pilkington disregarded the risk to Payne's health and delayed treatment for non-medical reasons, satisfying the pleading requirement for a claim of deliberate indifference.

Second, Payne has satisfied this pleading standard as to Johnny Bates and Donald Kern. Payne pleaded that after Pilkington determined that Payne suffered

9

from rhabdomyolysis, "Pilkington called a QCHC physician, presumably either defendant Bates or Kern, who confirmed that Payne needed immediate treatment in a hospital." (Doc. 22, ¶ 83). This is the only way in which either Bates or Kern would have been made aware of these events as they were happening. Because Payne does not know at this stage whether Pilkington called Bates or Kern, he pleaded in the alternative that one of them is liable for deliberate indifference. Pleading in the alternative is allowed under the Federal Rules of Civil Procedure, which provide,

> A party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones. If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient.

Fed. R. Civ. P. 8(d)(2).

Because Payne pleaded that Pilkington called either Bates or Kern, who confirmed that Payne needed immediate treatment in a hospital, Payne's pleading plausibly alleges that either Bates or Kern had actual knowledge of a risk of serious harm.

Payne then alleges that Bates or Kern "confirmed that Payne needed immediate treatment in a hospital." (Doc. 22, ¶ 83). Payne also alleges that Bates and Kern were aware of QCHC's policy of delaying emergency treatment to avoid associated costs, *id.*, ¶ 77-79, and—in compliance with that policy—failed, as the physicians overseeing Pilkington's actions and Payne's care, to ensure that Pilkington, Rutland, Smith, Ballentine, or Phillips provided Payne with care, *id.*, ¶

10

88. These facts, accepted as true, plausibly show that Bates or Kern disregarded the risk to Payne's health and delayed treatment for non-medical reasons, satisfying the pleading requirement for a claim of deliberate indifference.

As to QCHC, "[w]hen a private entity . . . contracts with a county to provide medical services to inmates, it performs a function traditionally within the exclusive prerogative of the state. In so doing, it becomes the functional equivalent of the municipality." *Buckner v. Toro*, 116 F.3d 450, 452 (11th Cir. 1997) (citations omitted). Thus, the private entity is liable under Section 1983 for an injury resulting from the performance of that function only if the injury resulted from the entity's "policy or custom." *Id.* (citing 42 U.S.C. § 1983). It has already been established that Payne pleaded that he suffered an injury. *See supra*. The remaining question is whether he sufficiently pleaded that the injury resulted from QCHC's policy or custom.

Payne pleaded that "[e]ven if an inmate has an immediate medical need that will be exacerbated by a delay in treatment (like Payne's rhabdomyolysis), neither QCHC and its medical personnel nor the sheriff and jail personnel will call an ambulance or otherwise make sure the inmate promptly receives the medical care required." (Doc. 22, ¶ 73). Instead, Payne alleges, "inmates will either be given an OR bond and put out on the street (to walk to the hospital if they cannot get a ride) or be forced to wait on a Cherokee officer to pick the inmate up and take the inmate

to the hospital." *Id.*, ¶ 74. He further alleges that "[t]his policy and custom was established and maintained by defendants Cherokee, Phillips, QCHC, Bates, Kern, Pilkington, Ballentine, Rutland, and Smith," *id.*, ¶ 77, "so that the sheriff could avoid responsibility for the costs of necessary emergency medical care, including ambulance and hospital charges and not for any legitimate purpose," *id.*, ¶ 78.

Payne alleges that after realizing that Payne needed immediate treatment from a hospital, Pilkington, "pursuant to [this] established policy regarding Cherokee (and other non-county) inmates, referred Payne to jail personnel to contact the Town of Cherokee to come pick Payne up and take him to the hospital." *Id.*, ¶ 72. She did this "[r]ather than call[ing] 911 or otherwise tak[ing] steps to get Payne promptly to the hospital." *Id.* These facts, accepted as true, plausibly show that Payne's injury resulted from QCHC's policy or custom, satisfying the pleading requirement for a claim of deliberate indifference against QCHC.

Thus, Payne has plausibly stated a claim of deliberate indifference against each of Pilkington, Bates or Kern, and QCHC.

**Count III: Medical Negligence**

Next, Payne brings a claim of medical negligence against Pilkington, Bates or Kern, and QCHC.

Section 6-5-551 of the Alabama Code provides that any action against a healthcare provider for a breach of the standard of care is governed in all aspects by

the Alabama Medical Liability Act (AMLA). Ala. Code § 6-5-551. Defendants argue that based on Section 6-5-551, Payne was required to comply with the heightened pleading requirements laid out in the AMLA. (Doc. 26-1 at 10-15).[1] This is incorrect.

The AMLA's heightened pleading standard does not apply in federal court. *Renney v. Alabama Dep't of Corr.*, No. 5:23-cv-00361, 2024 WL 4190873, at *13 (N.D. Ala. Sept. 13, 2024). When federal courts consider state law claims under either diversity jurisdiction or pendent jurisdiction, "'only substantive state law must be applied,' while 'federal law governs matters of procedure.'" *Palm Beach Golf Ctr.-Boca, Inc. v. John G. Sarris, D.D.S., P.A.*, 781 F.3d 1245, 1259 (11th Cir. 2015) (quoting *Lundgren v. McDaniel*, 814 F.2d 600, 605 (11th Cir. 1987)); *see also Hanna v. Plumer*, 380 U.S. 460, 465 (1965) ("[F]ederal courts are to apply state substantive law and federal procedural law."). "Thus, where a state employs a heightened pleading requirement, 'a federal court . . . should instead follow Fed. R. Civ. P. 8(a).'" *Palm Beach Golf*, 781 F.3d at 1260 (quoting *Caster v. Hennessey*, 781 F.2d 1569, 1570 (11th Cir. 1986)). *See also Cohen v. Off. Depot, Inc.*, 184 F.3d 1292, 1296 (11th Cir. 1999), opinion vacated in part on other grounds on reh'g, 204 F.3d

---

[1] The AMLA provides the following heightened pleading standard: "The plaintiff shall include in the complaint filed in the action a detailed specification and factual description of each act and omission alleged by plaintiff to render the health care provider liable to plaintiff and shall include when feasible and ascertainable the date, time, and place of the act or acts. . . . Any complaint which fails to include such detailed specification and factual description of each act and omission shall be subject to dismissal for failure to state a claim upon which relief may be granted." Ala. Code 6-5-551.

13

1069 (11th Cir. 2000) (holding that a state statute's heightened pleading standard does not apply in federal court if it conflicts with Rule 8, and that where Rule 8 *allows* a case to proceed while the state statute *prevents* the case from proceeding, the two conflict). "[T]he United States Supreme Court has rejected a heightened pleading standard in federal court, except where such a requirement is specifically delineated by the federal rules." *Palm Beach Golf*, 781 F.3d at 1260 (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002)), and holding that the district court's dismissal of the plaintiff's claim "on the basis that it failed to satisfy Florida's heightened pleading standard was error"). Thus, "Alabama's heightened pleading standard [under the AMLA] . . . does not apply in federal court," and the pleading standard set forth in Rule 8 of the Federal Rules of Civil Procedure instead controls. *Renney*, 2024 WL 4190873, at *13.

Payne's allegations against Defendants meet Rule 8's pleading standard with regard to Count III for many of the same reasons that they meet the standard with regard to Count II. Payne alleges the time frame in which Pilkington and Bates or Kern treated him at the Jail and the harm that Defendants' alleged inadequate medical care caused. (Doc. 22 at 14-15). Defendants have fair notice of the facts underlying the medical malpractice claim. *See id.* at 9-12; *see also supra*. Furthermore, Payne alleges that QCHC nurses, aides, charge nurses, physicians, and other care providers, including the named defendants, acted as employees or agents

14

of QCHC, within the line and scope of their employment or agency, and for the benefit of QCHC. *See Bain v. Colbert Cnty. Nw. Alabama Health Care Auth.*, 233 So. 3d 945, 955 (Ala. 2017) (finding that a hospital can be held vicariously liable for the acts of its employees). Therefore, Payne has plausibly pleaded that QCHC is liable under agency principles.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss, (doc. 26), is **DENIED**.

**DONE** and **ORDERED** on February 25, 2026.

_____
**HAROLD D. MOOTY III**
UNITED STATES DISTRICT JUDGE