## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHWESTERN DIVISION

**BARRY PAYNE, JR.,**

    **Plaintiff,**

**v.**

                                   **Case No. 3:25-cv-776-HDM**

**BLAKE BURNS,** *et al.***,**

    **Defendants.**

### MEMORANDUM OPINION AND ORDER

Barry Payne, Jr., is suing numerous individuals and entities over his treatment at the hands of police and the medical care he received while in the Colbert County Jail. (*See* Doc. 22). Defendants include Blake Burns, Joshua Phillips, and Cherokee, Alabama ("Cherokee"), who Payne is suing for Burns's use of excessive force during his arrest of Payne in violation of 42 U.S.C § 1983, pursuant to a policy and custom of Phillips and Cherokee. *Id.* at 13. Burns, Phillips, and Cherokee (together, the "Cherokee Defendants") moved to dismiss all claims against them. (Doc. 33). The court denied their motion. (Doc. 45). The Cherokee Defendants subsequently moved for the court to alter, amend, or vacate that decision. (Doc. 56).

### LEGAL STANDARD

Generally, "a district court's authority to revise interlocutory orders . . . comes from Rule 54(b) . . . ." *Herman v. Hartford Life & Acc. Ins. Co.*, 508 F. App'x 923,

928 n.1 (11th Cir. 2013) (per curiam). "Rules 59(e) and 60(b) only come into play after a final, appealable judgment is entered." *Hornady v. Outokumpu Stainless USA, LLC*, 118 F.4th 1367, 1379 (11th Cir. 2024).

> Under Rule 54(b) of the *Federal Rules of Civil Procedure*,
>
> [A]ny order . . . that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

Fed. R. Civ. P. 54(b). "Rule 54(b) does not delineate the parameters of a district court's discretion to reconsider interlocutory orders." *Herman*, 508 F. App'x at 928 n.1. But "courts in the Eleventh Circuit have taken the position that a motion for reconsideration should only be granted if there is (1) an intervening change in controlling law; (2) newly discovered evidence; or (3) the need to correct clear error or prevent manifest injustice." *Hastings v. Advanced Corr. Healthcare, Inc.*, No. 2:20-cv-02, 2020 WL 4583653, at *3 (N.D. Ala. Aug. 10, 2020). *See also* 18 Wright & Miller's Federal Practice & Procedure § 4478.1 (3d ed. 2026).

"A motion for reconsideration cannot be used to relitigate old matters, raise argument or present evidence that could have been raised prior to the entry of judgment." *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 957 (11th Cir. 2009) (internal quotation marks omitted). *See also Sanderlin v. Seminole Tribe of Fla.*, 243 F.3d 1282, 1292 (11th Cir. 2001) ("Motions for reconsideration should not be used

to raise legal arguments which could and should have been made before the judgment was issued."). Nor may a motion for reconsideration be used merely to "show the [c]ourt how it could have done it better the first time." *Hysten v. Fargolman Mgmt. Grp.*, No. 1:21-cv-00791, 2021 WL 7708389, at *1 (N.D. Ga. June 1, 2021) (internal quotation marks omitted).

## DISCUSSION

The Cherokee Defendants' motion is due to be **DENIED**.

As a threshold matter, the Cherokee Defendants state that the motion to vacate is pursuant to Rule 59(e) of the Federal Rules of Civil Procedure. (Doc. 56 at 1). Qualified immunity is immediately appealable. *Mitchell v. Forsyth*, 472 U.S. 511, 527 (1985). Nonetheless, because the court's order denying qualified immunity is interlocutory, not a final order, it is subject to revision under Rule 54(b), not Rule 59(e)[1]. *See Koon ex rel. Glay v. Prince George's Cnty.*, No. CV DKC 17-2799, 2019 WL 2642834, at *1–2 (D. Md. June 27, 2019) (analyzing a motion for reconsideration of an order denying qualified immunity under Rule 54(b) and specifically stating that analysis under Rule 59(e) would be improper). *See also DOC App, Inc. v. Leafwell, Inc.*, No. 2:25-cv-838, 2025 WL 3753997, at *1 (M.D. Fla. Dec. 29, 2025) ("First, Defendant points out that Mr. Castro incorrectly relies on

---

[1] This distinction is not outcome determinative in this case. Rule 54(b)'s standard is "more flexible" than the "high threshold" set by Rule 59(e), *Austin v. Kroger Texas, L.P.*, 864 F.3d 326, 337 (5th Cir. 2017), but the Cherokee Defendants' motion fails to meet even that more flexible standard.

Federal Rule of Civil Procedure 59(e) in his motion. . . . Because the sanctions order was a non-final order, the Court must evaluate it under the standards inherent in Rule 54(b) . . . .”).

The Cherokee Defendants request reconsideration on four grounds: (1) the court incorrectly found that Defendant Burns's body camera footage does not directly contradict Payne's Complaint, (doc. 59 at 2); (2) Defendant Burns's third discharge of his taser was a de minimis use of force, justifying dismissal, *id.* at 7; (3) the court incorrectly found that Payne's Complaint sufficiently alleged claims against Cherokee and Phillips, *id.* at 10; and (4) the court applied the wrong deliberate indifference standard, *id.* at 17. The court will address each of these in turn.

The Cherokee Defendants' first argument—that the body camera footage directly contradicts Payne's complaint—merely repackages their arguments from their Motion to Dismiss. The court directly and unequivocally addressed these arguments in its order denying dismissal. (Doc. 45 at 7–8). The Cherokee Defendants may not like the court's interpretation of the body camera footage, but that does not entitle them to reconsideration. *See Wilchombe*, 555 F.3d at 957 (“A motion for reconsideration cannot be used to relitigate old matters . . . .”).

The Cherokee Defendants' second argument—that the use of force was de minimis and thus that dismissal is required—was not raised in their original Brief,

(*see* doc. 34), or in their Reply Brief, (*see* doc. 41). They admit this in their motion but argue that their reference to tasing as a "moderate use of force" is adequate to open the door to a de minimis argument now. (Doc. 56). They are incorrect. De minimis is a term of art with legal implications for use of force. *See Nolin v. Isbell*, 207 F.3d 1253, 1257–58 (11th Cir. 2000). "Even where not strictly necessary, an officer's use of force may still be lawful if it is de minimis." *Sayas v. Cook*, No. 3:24-cv-382, 2025 WL 3528333, at \*4 (N.D. Ala. Nov. 12, 2025). On the other hand, the Cherokee Defendants only argued in their briefing that moderate force may be *justified* during an arrest when a suspect resists. (Doc. 41 at 3–4). Arguing that use of force was justified by the circumstances is very different from arguing that it was de minimis and thus legally unimportant regardless of the circumstances. Accordingly, because a "motion for reconsideration cannot be used to . . . raise argument or present evidence that could have been raised prior to the entry of judgment," this argument may not be introduced on a motion for reconsideration.[2] *Wilchombe*, 555 F.3d at 957.

---

[2] The Cherokee Defendants also argue that *Sayas v. Cook*, No. 3:24-cv-382, 2025 WL 3528333, at \*4 (N.D. Ala. Nov. 12, 2025), constitutes intervening law and thus justifies reconsideration. This argument fails because *Sayas*, as a district court case, is not precedential. Additionally, even if the court were to consider the de minimis argument, the Cherokee Defendants have not shown that shooting a plaintiff with a taser constitutes de minimis force under governing law. *Compare Sayas*, 2025 WL 3528333 (Doc. 72, Brief of Defendant, at 6 (noting that police "drive stunned" the plaintiff several times)) *with* the present case (Doc. 45, Denial of Motion to Dismiss, at 2 (noting that police "shot Payne with a taser" several times)).

The Cherokee Defendants' third argument—that Payne failed to plead policy or supervisory liability as to Cherokee or Phillips—like their first argument, simply rehashes arguments that the court already considered and rejected in its denial of the Cherokee Defendants' Motion to Dismiss. In their Reply Brief to their Motion to Dismiss, "Defendants acknowledge that there appears to be two lines of cases regarding how specific and non-conclusory plaintiff's allegations must be with respect to prior misconduct the municipality or supervisor must be aware of to create liability." (Doc. 41 at 11). The court agreed with the line of cases that does not support the Cherokee Defendants' Motion to Dismiss. (*See* Doc. 45 at 13–20). "A motion for reconsideration cannot be used to relitigate old matters," *Wilchombe*, 555 F.3d at 957, and thus the Cherokee Defendants may not now make those same arguments and ask the court to change its mind.

Finally, the Cherokee Defendants' fourth argument—that the court applied the wrong deliberate indifference standard—also fails. There are two problems with this argument. First, the Cherokee Defendants argue that reconsideration is justified because the Eleventh Circuit's opinion in *Gantt v. Everett*, 162 F.4th 1107, 1112 (11th Cir. 2025), constitutes intervening authority. (Doc. 56 at 17). They argue that *Gantt*, which was released nearly two months after briefing in the instant case was complete, clarified the impact of another Eleventh Circuit opinion—*Wade v. McDade*, 106 F.4th 1251 (11th Cir. 2024)—which was published well *before*

briefing began. (Doc. 56 at 17). They dance around the fact that they failed to cite *Wade* in either their original Brief or their Reply Brief,[3] relying on the assertion that its "'sea change' impact on the Eleventh Circuit's deliberate indifference jurisprudence only became clear as courts in the circuit began to look to it more and more for guidance culminating in the *Gantt* decision." (Doc. 56 at 17 n.8). The court will not accept this bait-and-switch, as the "money language" (as the Cherokee Defendants describe it) is from *Wade* itself, *see id.* (quoting *Wade*, 106 F.4th at 1271), and the Eleventh Circuit decision which the Cherokee Defendants cite for its clear delineation between the pre-*Wade* and post-*Wade* deliberate indifference standard was released the year before briefing commenced, *see Stalley v. Cumbie*, 124 F.4th 122 (11th Cir. 2024).

Of course, as the Cherokee Defendants correctly point out, the court has the plenary discretion to revisit any of its interlocutory rulings if it is convinced that a different legal standard should have been applied, whether or not it finds *Gantt* to be intervening authority. This brings us to the second issue with the Cherokee Defendants' argument. Under either pre- or post-*Wade* authority, a defendant is

---

[3] The Cherokee Defendants state, "To be fair with the Court (and Plaintiff), Defendants, while arguing vigorously and at length that Payne had failed to state a medical claim against them, did not stress the distinction between pre-*Wade* and post-*Wade* authority in their initial Motion to Dismiss." (Doc. 56 at 17 n.8).

deliberately indifferent if he "knowingly ignored a substantial risk of harm" to the plaintiff. *Gantt*, 162 F.4th at 1112.

The complaint, as explained by the court in its denial of the Cherokee Defendants' Motion to Dismiss, alleges that Phillips learned Payne needed immediate hospital care, yet—pursuant to a policy aimed at avoiding ambulance and hospital costs—agreed not to call 911 and instead delayed treatment until someone from Cherokee could transport Payne, causing more than an hour's delay. (Doc. 45 at 23–24). This was a knowing delay for non-medical reasons, which is enough to plausibly plead deliberate indifference at this stage.

The Cherokee Defendants, relying on *Gantt*, argue that because Phillips "sought to aid" Payne by eventually driving him to the hospital himself, he cannot have knowingly ignored a risk of harm. (Doc. 56 at 18). But *Gantt* is factually distinguishable from the present case. In *Gantt*, when the defendant, Everett, "realized that Gantt was going to jump, Everett chased after her to try to stop her." *Gantt*, 162 F.4th at 1112. The court held that "[b]ecause Everett sought to aid Gantt, we cannot say that she knowingly ignored a substantial risk of harm at the same time." *Id.* In *Gantt*, then, the defendant never ignored a substantial risk of harm because, under the court's analysis, *as soon as she was aware* of that substantial risk of harm, she chased Gantt down in an attempt to physically stop her from harming herself. In the present case, on the other hand, Payne pleaded that Phillips was aware

8

of a substantial risk of harm, and instead of immediately taking the most efficacious action to prevent that harm, as Everett did, Phillips failed and refused to call 911 or otherwise ensure that Payne was taken immediately to the hospital. (Doc. 45 at 23). Rather, he—for non-medical reasons—took a less efficacious series of actions that resulted in care being delayed by over an hour. This sufficiently pleads deliberate indifference under either pre- or post-*Wade* authority. Thus, the court's denial of the Motion to Dismiss is consistent with *Gantt*.

## CONCLUSION

For the foregoing reasons, the Cherokee Defendants' Motion to Alter, Amend, or Vacate the court's denial of their motion to dismiss is **DENIED**.

**DONE** and **ORDERED** on April 8, 2026.

_____
**HAROLD D. MOOTY III**
UNITED STATES DISTRICT JUDGE